The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Ben Earl BOOKMAN, Jr., Defendant-Appellant.

No. 78–203.

Colorado Court of Appeals, Div. II.

Feb. 21, 1980.

As Modified On Denial of Rehearing April 10, 1980.

Certiorari Granted Aug. 5, 1980.

Robert R. Gallagher, Jr., Steven R. Polidori, Littleton, for plaintiff-appellee.

J. Gregory Walta, Public Defender, Norman R. Mueller and Shelley Gilman, Deputy State Public Defenders, Denver, for defendant-appellant.

ENOCH, Chief Judge.

Convicted by a jury of manslaughter, defendant appeals. Defendant contends that police officers subjected him to an unreasonable detention, or alternatively, an illegal arrest in violation of his Fourth Amendment rights. He also argues that his Fifth Amendment rights were violated during a lengthy interrogation by police. Thus, defendant contends, the trial court erred by admitting as evidence statements he made and other evidence obtained by the police officers. We need address only the Fourth Amendment issue because it alone requires a reversal.

The victim disappeared the night of June 10, 1977, and her body was found a week later. Authorities learned that defendant, age 19, was one of two persons last seen with the victim on the night of her disappearance. Two detectives contacted defendant on July 19 at 1:45 p. m. at a restaurant where he was employed. In response to their requests to talk with defendant, to which defendant consented, his employer offered the use of his office. Officers declined, and instead they escorted defendant outside, to their patrol car.

After being seated inside the car, defendant was asked his name, birthdate, and other statistical information, and then was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant denied any responsibility for the death and made no incriminating statements at that time.

After 45 minutes to an hour of questioning about the homicide, defendant consent-

ed in writing to the search of his car, parked nearby. One of the detectives continued to question defendant while the other searched his car. A substance which the officer thought might be blood was found in the car, and within a short period of time other officers, crime laboratory personnel, and two representatives of the district attorney's office had assembled in the parking lot near the patrol car.

The detective who had left the patrol car returned, repeated the *Miranda* warning to defendant, and took up the questioning, while the other detective left the car. After a total of approximately four hours of interrogation, a senior officer joined the detective and the defendant in the car, and within a few minutes thereafter, defendant made an oral confession to the homicide in response to a question interjected by the senior officer.

At that time, a tape recorder was activated, and at the officers' request, defendant repeated his oral confession. The repeated confession was recorded, along with additional interrogation. After the confession was taped, officers drove defendant from the parking lot to the place where the victim had been found and then delivered defendant to the county jail at 8:10 p. m. The interrogation continued until approximately 11 p. m. Not until 11:20 p. m. was the defendant allowed to see his parents, who had spent the afternoon trying to locate their son through various law enforcement agencies. The parents had waited at the jail for over two hours before finally being permitted to see defendant.

In denying defendant's motion to suppress, the trial court found that, as reflected by an officer's written report, an offer of psychiatric help was made prior to any confession. The court ruled that the lengthy questioning of defendant in the patrol car did not constitute an arrest, that the search of defendant's car was valid upon voluntary, written consent; that defendant's first confession furnished probable cause for an arrest which occurred when officers drove with defendant from the parking lot; that lengthy pre-arrest detention was justified by the violent nature of

the homicide being investigated; that defendant's confession was voluntary in the totality of the circumstances; and that defendant's testimony of reliance on promises of mental help was not persuasive. We agree with defendant's contention that his Fourth Amendment rights were violated.

■ The probative facts known to the detectives when they set out to interrogate the defendant were that the woman's body had been found and that defendant was one of two persons last seen with her. These facts could not amount to probable cause to believe that defendant had committed the killing. Therefore, under the circumstances here, we hold that at the time when detectives escorted the defendant from the restaurant to the police car, he was the subject of an illegal arrest. *Dunaway v. New York*, 420 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Arrests for investigatory purposes and without probable cause have been condemned repeatedly. *See, e. g., Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *People v. Bates*, 190 Colo. 291, 546 P.2d 491 (1976).

The state asserts that the questioning was nonaccusatory in nature and argues that because defendant received *Miranda* warnings initially, and later in the interrogation was assured that he did not have to talk, there was no violation of the Fourth Amendment. In denying the motion to suppress, the trial court also relied on the fact that defendant had received *Miranda* warnings.

■ *Miranda* warnings alone cannot dispel the taint of an illegal arrest, nor break the causal connection, as here, between an unlawful detention and a confession. *People v. Bates, supra.* Rather, as stated in *Brown*, "no single fact is dispositive" as to whether the taint of unconstitutional arrest has been attenuated. *Miranda* warnings, the temporal proximity of the arrest to the confession, as well as any intervening circumstances must be weighed.

■ Here, defendant was the object of custodial interrogation for approximately four hours prior to his first confession, and at times was surrounded by numerous law enforcement officials. Under these facts,

we hold that repeated *Miranda* warnings and the passage of time cannot overcome the purposeful and flagrant arrest without probable cause. Thus, defendant's statements and physical evidence obtained during or as a result of the interrogation should have been excluded as fruits of the illegal arrest. *Brown, supra; People v. Bates, supra.*

Because we have decided that defendant was subject to an illegal arrest in violation of his Fourth Amendment rights, which requires a suppression of evidence obtained and statements made, we need not consider the issue of an unreasonable detention or the Fifth Amendment problem concerning defendant's confessions. Nor do we reach the issue of whether the trial court properly refused defendant's theory-of-defense instruction. We have considered defendant's contention concerning the necessity for a reenactment of the reckless manslaughter statute, § 18–3–104(1)(a), C.R.S. 1973, and find it without merit.

The judgment is reversed and the cause remanded for a new trial consistent with the views expressed herein.

RULAND and STERNBERG, JJ., concur.